This bill prays the specific performance of a contract for the sale of land and an office building erected thereon, located in the city of Asbury Park. The complainant is the vendor and the defendant the vendee. The terms of the contract are not in dispute. The purchase price of the property was $150,000. The contract contained the following clause:
"This sale is made subject to the following leases now on the building:
S.S. Adams Company, lease expires April 1st, 1932.
May Epstein, lease expires April 1st, 1930.
Max Eisenberg, lease expires April 1st, 1926.
Calogers Aguiliano, lease expires April 1st, 1926.
Sam Lee, lease expires April 1st, 1926.
G. Fred Beegle, lease expires April 1st, 1926.
City of Asbury Park, lease expires April 1st, 1926.
This agreement is also made subject to a lease executed by the Standard Realty Company and T. Frank Appleby, said lease expiring April 1st, 1932."
The agreement is dated April 8th, 1925, and provides for settlement on October 1st, 1925. Fifteen thousand dollars was paid by the defendant to the complainant on account of the purchase price. At the time fixed for settlement the defendant refused to perform, alleging that the vendor had misrepresented the facts concerning the lease of the city of Asbury Park, in that that lease did not expire on April 1st, *Page 273 
1926, but there was a three-year lease expiring April 1st, 1928; that this representation was a material inducement to the contract and that the alleged longer term lease constituted a defect in the title or an encumbrance on the property subject to which he was not obliged to and would not take title. The defendant has also counter-claimed for loss alleged to have been sustained by him because of the complainant's inability to comply with the terms of the contract of sale, which the defendant alleges, prevented a resale of the premises by the defendant at an advance of $30,000. Defendant demands this sum as damages as well as the return of the $15,000 paid under the terms of the contract. It is undisputed that the defendant did have a contract of resale at the advanced price stated, and settlement thereunder was to have been made at the same time that settlement under the contract, the subject of this suit, was to have been made. None of the facts in this cause are in dispute except as to the existence of a lease with the city of Asbury Park, the contention of the complainant being that the city had no lease, or, if it did have a lease, that that lease expired on April 1st, 1926, and the defendant contending that the city's lease was a three-year lease expiring April 1st, 1928. The facts with reference to the city's tenancy, as I find them from the testimony, are as follows: The city of Asbury Park had been a tenant of a portion of this building for six years prior to April 1st, 1925, under three-year leases. Before the expiration of the last lease the complainant notified the city that the rent for the ensuing year would be $2,750, and if it desired to continue its tenancy for another three-year term the rental would be increased $250 each year. The city clerk then communicated to an officer of the complainant company the fact that the current appropriation would not permit of an increased rental for 1925, and as the result of this the complainant agreed to a modification of the rent for 1925 and offered a one-year lease at the adjusted rental. This one-year lease was prepared by the agent of the complainant and forwarded to the city clerk on April 16th, 1925. It was *Page 274 
never executed by either party and no rent was ever paid by the city for 1925. There is no record on the minutes of the city commission of any action on this lease. There is a record on the minutes of the city commissioners' meeting, held on April 7th, 1925, of a resolution authorizing the mayor and city clerk to execute a three-year lease with the complainant for $2,500 for the first year, $3,000 for the second and $3,250 for the third, but such a lease had never been offered to the city.
After the contract was made, and along in August, 1925, a controversy arose between the city and the complainant as to the city's lease, the officials claiming that the city had a three-year lease and the complainant alleging that the lease was for one year only. The whole basis of the city's claim that it had a three-year lease is a telephone conversation which the city clerk alleges she had with an officer of the complainant, which that officer, called as the defendants' own witness, denies. It is quite clear that the city was in possession of a portion of this building without any lease at all. The complainant had refused the three-year lease and the city had failed to act on the one-year lease which the complainant had submitted. The minds of the parties had, therefore, never met on the subject of a new lease. The city was therefore a hold-over tenant, a mere tenant at sufferance, or, at the most, a tenant at will. The city has given notice, however, that it intends to remain in possession of said premises under the claim of a three-year lease until ousted by a court of competent jurisdiction.
On December 16th, 1925, the complainant gave the city of Asbury Park written notice to vacate the portion of the building of which it was in possession, on April 1st, 1926. This notice was sent to the city commissioners by registered mail, duly received by them, and on December 17th, 1925, the usual registry receipt card, signed for the commissioners, was returned to the complainant. Under these circumstances defendant claims that if he were obliged to accept title to the premises, the subject of this contract, he would be purchasing a law suit, and this, he claims, he is not obliged to do. *Page 275 
The first question which presents itself is as to the nature of the tenancy of the city of Asbury Park. As already stated, this tenancy must be either one at sufferance or at will.
A tenant at sufferance is one who comes into possession of land by lawful title, usually by virtue of a lease for a definite period, and after the expiration of the period of the lease, holds over without any fresh leave from the owner. 2 Bl.
(Lewis' ed.) 150; 1 Washb. Real Prop. 383; Poole v. Engelke,61 N.J. Law 124.
A tenant at will is one who enters into possession by virtue of permission of the owner or pursuant to a lease for an indefinite time, holding during the joint wills of the parties, either party having the right to terminate the tenancy at any time. 2 Bl.145; 1 Washb. Real Prop. 370; McEowen v. Drake,14 N.J. Law 523.
It would seem to be perfectly clear, therefore, that the city of Asbury Park was a tenant at sufferance unless the landlord, the complainant here, after the expiration of the city's three-year lease, either expressly or impliedly consented to a continued occupation of the premises, in which case a tenancy at will or from year to year would arise. Yetter v. KingConfectionery Co., 66 N.J. Law 491.
Estates from year to year have been developed gradually from estates at will by judicial legislation. 1 Washb. Real Prop.382; McEowen v. Drake, supra.
In my judgment, however, the character of the city's tenancy was one at sufferance. It was certainly that immediately after the termination of the city's three-year lease, and the fact that the complainant refused thereafter to accept any rent from the city, indicates a refusal on the landlord's part to consent to the creation of a new tenancy.
The next question which arises is whether or not the complainant, since October 1st, 1925, has done anything to change the character of the city's tenancy or in any way extend the term of that tenancy beyond April 1st, 1926. This involves the question of what notice to vacate is required to be given to the city under the circumstances of this case, the sufficiency of the notice already given or whether or not *Page 276 
the tenancy may still be terminated on April 1st, 1926, by a proper notice to the tenant.
A tenant at sufferance holds by laches of the landlord, is not in privity with the landlord, and the tenancy could, at common law, be terminated at any time without notice. At common law neither a tenant at sufferance nor at will was entitled to notice to quit. 1 Washb. Real Prop. 394; Moore v. Moore,41 N.J. Law 515; Moore v. Smith, 56 N.J. Law 446; Gouvernator v. Kenin,66 N.J. Law 114.
The common law rule respecting notice to tenants at sufferance and at will has been changed by statute in this state so that now both tenants at sufferance and at will are entitled to notice to quit. Landlord and Tenant act, 3 Comp. Stat. pp. 3072, 3077 §§18c, 29; 1 Cum. Supp. Comp. Stat. p. 1773 § 109 subdiv. 18a.
Considerable uncertainty and confusion with respect to the required notice to tenants at will and at sufferance has been caused by attempts by the legislature to engraft on the Landlord and Tenant law some restrictions and requirements through the medium of the District Court act; but the sufficiency of notice is governed by the Landlord and Tenant act and not by the District Court act. Van Vlannderen Machine Co. v. Fox,95 N.J. Law 40.
The provisions for notice in landlord and tenant cases, as contained in the District Court act, are merely jurisdictional requirements. An examination of our statutes will disclose the fact that there has never been any requirement in the Landlord and Tenant act that a notice to quit be given to a tenant at sufferance any particular length of time before the date on which such tenant was required to surrender possession.
In Moore v. Moore, supra, it was held that a tenant at sufferance is not entitled to notice at common law, and under the Landlord and Tenant act a previous demand of possession only is required as a condition upon which a summons may issue. CitingP.L. 1876 p. 76 ¶ 1 (Rev. p. 576).
The provisions of the Landlord and Tenant act requiring notice to tenants at sufferance in force to-day will be found *Page 277 
in 1 Cum. Supp. Comp. Stat. p. 1773 § 109 subdiv. 18a, and it will be noted that that act requires no more than a demand for possession, and that such demand would be sufficient if made immediately preceding the issuance of summons.
Sections 107 and 109 of the District Court act of 1898 provide for certain notices to quit in cases of tenancy at sufferance or at will as jurisdictional requirements for ouster of a tenant in possession by the processes of that court. Section 109, as originally drafted, required three months' notice to both tenants at sufferance and at will. Gouvernator v. Kenin, supra. What is now section 107 of the District Court act was section 123 of the first general District Court act of 1877, and the present section 109 was section 126 of the original act. The jurisdictional requirements of three months' notice to tenants at sufferance and at will was contained in that act. Rev. 1877 p.1300. In the case last cited Mr. Justice Fort held that, notwithstanding the provisions of section 107 of the District Court act requiring notice to tenants at sufferance to be in writing and served in the manner specified by that section, section 109 modified this requirement as to tenants at sufferance and at will, and there said:
"The drafter of section 109 should have left out the words `at sufferance' if the three months' notice was not intended to be given in such cases. To require such a notice is clearly a hardship and useless, but the statute requires it in tenancies `at sufferance,' and the facts proven in this case show tenancy `at sufferance.'"
He then held, however, that a verbal notice given to a tenant at sufferance was sufficient. That case was decided February, 1901, and at the then session of the legislature section 109 of the District Court act was amended so as to leave out the words "or at sufferance," evidently because of this decision. This section of the District Court act as it appeared in the original act of 1877, and as was continued until 1901, is the only statutory requirement of notice for any specified time in tenancies at sufferance which my examination of *Page 278 
the authorities has disclosed. At the time this act was in force there was no similar provision in the Landlord and Tenant act, nor has any such provision since been inserted in that act by the legislature; but in 1903 the legislature amended the Landlord and Tenant act by requiring three months' notice to quit in tenancies at will and from year to year. 3 Comp. Stat. p. 3072 § 18c.
At no time in the history of this state, therefore, either at common law or by statute, has there been any requirement of any notice for any particular length of time to tenants at sufferance except during the period when section 126 (now section 109) of the District Court act, as originally enacted, was in force; and this was merely a jurisdictional requirement in that court. In my judgment, therefore, the notice requiring the city of Asbury Park to terminate its tenancy on April 1st, 1926, may be given on any day prior to that date, even up to the 31st day of March. There is some mention in the books of a three days' notice in tenancies at sufferance, but I find no statutory or common law authority for this sort of notice, except for non-payment of rent. Nix.Dig. (1868) 422; Schuyler v. Trefren, 26 N.J. Law 213;Fowler v. Roe, 25 N.J. Law 549. The notice required in tenancies at sufferance, however, must be in writing, and must be served "either personally upon the tenant or such person in possession by giving him a copy thereof or by leaving a copy thereof at his usual place of abode, with some member of his family above the age of fourteen years; or where, for any reason, such service cannot be had, then the same may be served by affixing a copy of such notice to the door of any dwelling on such demised premises occupied by such tenant." 1 Cum. Supp.Comp. Stat. p. 1774, §§ 109, 18a subdiv. 1; Van VlannderenMachine Co. v. Fox, supra.
If it be said, however, that the tenancy of the city of Asbury Park is one at will, in view of Yetter v. King ConfectioneryCo., supra, then and in such case no further notice is required to be given to the city than that which was given on December 16th, 1925. In tenancies at will, or from year to year, the statute requires, as above stated, a *Page 279 
three months' notice, but that notice is not required to be served in the same manner as notice in cases of tenancies at sufferance. A notice served by mail, or even a verbal notice, is sufficient. Gouvernator v. Kenin, supra. Whether, therefore, the tenancy of the city be one at sufferance, at will, or from year to year, that tenancy may be terminated on April 1st, 1926, which is the date of expiration of the city's tenancy given by the complainant in the contract of sale. There has been, therefore, no misrepresentation by the complainant as to the city's tenancy.
If the defendant now takes title he may terminate the city's tenancy at sufferance by service of the required notice. If the tenancy is at will, then, in my judgment, the notice already given on December 16th last is sufficient. The foregoing remarks are not, of course, intended to apply to notices required under recent emergency legislation respecting dwellings, as those acts are not here involved.
But it is contended that, because of the city's contention that its tenancy does not expire until April 1st, 1928, the acceptance of title by the defendant will force upon him a lawsuit, and that he is not obliged to purchase a lawsuit. That statement, as a general proposition, is correct, but, in the language of Vice-Chancellor Stevenson, in Barger v. Gery, 64 N.J. Eq. 263: "When the authorities speak of the hazard of litigation, to which the purchaser must not be subjected * * * they must refer to a hazard which is to be determined by the chance of successful attack, as viewed by the court in the suit of specific performance."
Considerable space is taken up in the brief of counsel for defendant by the argument on the question of the right of the complainant in a specific performance suit to force a defective title upon an unwilling defendant. But here there is no defect in title. There is not even a suggestion anywhere that the complainant's title is not perfect. The only objection which has been made is based upon the existence of a lease held by the city of Asbury Park for a longer term of years than that specified in the contract. I have already determined that the city's lease does not extend beyond the *Page 280 
time mentioned in the contract; but even if it did, it would constitute merely an encumbrance upon the property, and not a defect in the title, and an encumbrance for which there might, under the circumstances of this case, be compensation to the vendee for deficiency. Van Blarcom v. Hopkins, 63 N.J. Eq. 466.
This is the contention of complainant; that if the city's lease is for a longer term than that specified in the agreement of sale, as that lease covers only a small portion of the building which is the subject of the sale, compensation may be made to the vendee on the decree for specific performance. But as no such encumbrance exists, it is unnecessary to discuss this question further.
Any impending litigation which might excuse the vendee from performance, it seems to me, must be litigation which has some possibility of success. The fact that the city of Asbury Park has indicated that it desires to indulge itself in a lawsuit at the expense of its taxpayers does not necessarily excuse the defendant from performance, especially when it is so clearly apparent that the city's claim is without any basis either in fact or law. Professor Pomeroy, in his work on Spec. Perf.Cont. (at p. 524) § 204, has this to say on this subject:
"Whatever be the cause from which the doubt arises, whether from an unsettled principle of the general law, or from the difficulty of construing instruments, or from past facts and events, it must be something more than a mere speculation, theory or possibility. A court of justice, in all its investigations, deals with arguments more or less based upon a balance of probabilities, and in rendering its decisions must be satisfied if it reaches a conclusion which is morally certain. To admit of objections which were purely speculative, or merepossibilities, would destroy the practical efficacy of all judicial proceedings. A doubt covering the vendor's title, therefore, which can avail to defeat his remedy of specific performance, must be reasonable, and, so far as it depends upon contingent events or uncertain facts, their occurrence or existence must be fairly probable."
In the note to this section he quotes Alderson, B., inCottell v. Corrall, 4 Y. C. Ex. 237, as saying: "There must be a reasonable, decent probability of litigation."
Further quoting from cases therein cited: *Page 281 
"But a threat, or even the possibility of a contest, will not be sufficient. The doubt must be considerable and rational, such as would or ought to induce a prudent man to pause and hesitate, and not based upon captious, frivolous and astute niceties, but such as to produce real bona fide hesitation in the mind of the chancellor."
As stated before, there is here no claim of defective title, but merely a claim of the existence of an additional encumbrance in the form of a lease. The possibility of successful litigation establishing this lease as claimed by the city, and, indeed, the probability of any litigation at all, is, to my mind, so remote that any further consideration of the question is unnecessary.
With respect to the counter-claim of the defendant, this, of course, must be denied. The testimony, pleadings and evidence indicate that the defendant voluntarily canceled his agreement of resale and returned to the vendee the down money, so that he is not in any position to claim damages from the complainant on account of his loss on that contract of resale. The vendee's refusal to accept title being based on the same reason as the defendant's refusal to take title from the complainant, specific performance of that contract might have been had if it had not been canceled.
I will therefore advise a decree in favor of the complainant, in accordance with the prayer of the bill, and a dismissal of the counter-claim. *Page 282